| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>EASTERN DISTRICT OF NEW YORK | <u>NOT FOR PUBLICATION</u> |
| United States of America | <u>MEMORANDUM & ORDER</u> |
| | 94-cr-1119-1 (ERK) |
| – against – | |
| Gregory Scarpa, Jr. | |
| Defendant. | |

KORMAN, *J.*:

I grant Mr. Scarpa's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). Several reasons underlie that conclusion, the most significant of which is that Mr. Scarpa is a seriously ill man who, at the age of 69, is unable to care for himself and is unlikely to recidivate. That is compounded by the risks that Mr. Scarpa would face from Covid-19 as an immunosuppressed individual, and indeed I note that there was a recent coronavirus outbreak at his institution. Finally, Mr. Scarpa has accomplished substantial rehabilitation during his 32 years of incarceration.

The compassionate release statute, § 3582(c)(1)(A)(i), provides that:

> the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may

1

>impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that— extraordinary and compelling reasons warrant such a reduction[.]

The Second Circuit has held that, in reviewing a compassionate release motion brought by a prisoner, district courts are free "to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them" and are not bound by Sentencing Guideline § 1B1.13 or its application notes. *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020). A district court's discretion in this context is "broad," and the factors I may consider include but are not limited to the defendant's health (including his susceptibility to the coronavirus) and his rehabilitation, so long as rehabilitation is not the sole factor justifying release. *Id.* at 237–38. *See also United States v. Roney*, 2020 WL 6387844, at *1 (2d Cir. Nov. 2, 2020) (summary order) ("The determination as to what constitutes extraordinary and compelling reasons warranting a reduction is committed to the sound discretion of the district court.").

Mr. Scarpa's medical prognosis is grim: he has been diagnosed with late stage nasopharyngeal cancer, which has required radiation treatment, chemotherapy, and multiple surgeries, including the removal of a tumor that has left an opening in his throat. As the Deputy Chief Probation Officer notes, Mr. Scarpa's cancer, surgeries, and chemotherapies "have clearly taken a toll on his health, along with his advancing

2

age." ECF No. 1056. The U.S. Attorney argues that, because Mr. Scarpa's cancer is in remission, this factor does not weigh in favor of compassionate release, but cancer in remission may return. *See United States v. Dimasi*, 220 F. Supp. 3d 173, 192–93 (D. Mass. 2016) (concluding that compassionate release was warranted even though cancer was in remission); Mayo Clinic, *When Cancer Returns*, https://www.mayoclinic.org/diseases-conditions/cancer/in-depth/cancer/art-20044575.

This consideration aside, Mr. Scarpa suffers serious complications from that cancer, perhaps most notably that he regularly chokes on his food due to the removal of his salivary glands. His medical records indicate that his dysphagia (difficulty swallowing) is "getting worse," ECF No. 1051 at 14, and the U.S. Attorney acknowledges that it "increases the risk of his choking on his food." Opp. 24, ECF No. 1054. This condition is sufficiently severe that Mr. Scarpa tries to eat only when there is someone available to assist him, and his medical providers have had to teach him how to perform the Heimlich maneuver on himself. ECF No. 1051 at 14. Mr. Scarpa's "records make it clear that he has, for a number of years, had trouble eating as a result of his condition and surgery—indeed, eating in and of itself, is a dangerous proposition." ECF No. 1056. Mr. Scarpa also suffers from a slew of other ailments, including arthritis, psoriasis, hypothyroidism, hypertension, and nerve damage. His medical records disclose that he has suffered five hernias in the last twelve years and

that he uses an inguinal truss. And he is being treated for symptoms of mental decline, which are consistent with early-stage Alzheimer's or dementia. Mr. Scarpa is also immunosuppressed as a result of his cancer treatment, and thus at heightened risk if he were to contract Covid-19—even more so than the usual risk for a 69-year-old man. Indeed, as the U.S. Attorney acknowledges, the Iowa State Penitentiary where Mr. Scarpa is incarcerated has recently suffered a coronavirus outbreak. Opp. 28.

Mr. Scarpa has also demonstrated substantial rehabilitation. As I have previously noted, "the prison facility at which Scarpa is incarcerated advises that Scarpa has been an extraordinarily model prisoner," including in his work with mentally ill prisoners. *United States v. Scarpa*, 155 F. Supp. 3d 234, 246 (E.D.N.Y. 2016), *rev'd* 861 F.3d 59 (2d Cir. 2017). As both the Second Circuit and I have recognized, moreover, "there is no question" that Mr. Scarpa "provided substantial assistance in locating the cache of explosives components hidden in" the home of a conspirator involved in the 1995 Oklahoma City bombing. 861 F.3d at 71; *see also* 155 F. Supp. 3d at 237–38. The U.S. Attorney acknowledges that Mr. Scarpa has, at a minimum, had no disciplinary infractions between 1999 and 2011 (and is unaware of any violations since 2011), but suggests that a handful of infractions in the 1990s indicate that Mr. Scarpa has not rehabilitated. Opp. 27–28. But Mr. Scarpa's conduct

over the last 20 years is plainly more relevant than his conduct before that time.  *See also* ECF No. 1056.

The U.S. Attorney underscores the gravity of Mr. Scarpa's crimes, the most serious of which are several conspiracies to commit murder.  I do not minimize the evil acts Mr. Scarpa committed over the course of his criminal career.  The reality, however, is that Mr. Scarpa is a seriously ill man who is unable to care for himself and has little prospect of recidivating.  Those constitute "extraordinary and compelling reasons" to release Mr. Scarpa into the care of his family.  *See, e.g.*, *United States v. Wong Chi Fai*, 2019 WL 3428504, at *3 (E.D.N.Y. July 30, 2019) (granting compassionate release to gang leader serving term of life imprisonment who had metastatic cancer and was "frail . . . and can barely eat on his own").  I agree with Judge Caproni that where, as here, the defendant "can do no more harm" due to his physical and mental condition, the "compassionate thing to do in this case is to release [the defendant] early, consistent with the intent of Congress when it passed the First Step Act."  *United States v. Ebbers*, 432 F. Supp. 3d 421, 433 (S.D.N.Y. 2020); *see also United States v. Hansen*, 2020 WL 1703672, at *8 (E.D.N.Y. Apr. 8, 2020) (collecting cases and granting compassionate release where defendant's medical records "overwhelmingly depict a body and mind besieged with mounting, serious afflictions").

Finally, I conclude that the decades Mr. Scarpa has served in prison are sufficient but not greater than necessary under 18 U.S.C. § 3553. I find that, "notwithstanding the seriousness" of Mr. Scarpa's criminal conduct, a sentence of time served appropriately "reflect[s] the seriousness of the offense," "afford[s] adequate deterrence to criminal conduct," "protect[s] the public from further crimes of the defendant," and "provide[s] just punishment for the offense." *Wong Chi Fai*, 2019 WL 3428504, at *4 (quoting 18 U.S.C. § 3553(a)). That is particularly true here because, as Judge Dearie noted in *Wong Chi Fai*, the last several years of Mr. Scarpa's sentence "have been spent in medical purgatory." *Id.* (citing *United States v. McGraw*, 2019 WL 2059488, at *5 (S.D. Ind. May 9, 2019) (granting compassionate release notwithstanding the defendant's "very serious" criminal conduct and life sentence while noting that defendant's sentence "has been significantly more laborious than that served by most inmates" due to his deteriorating medical condition)); *see also United States v. Rice*, 2020 WL 4505813, at *4 (S.D.N.Y. Aug. 5, 2020) (granting compassionate release despite defendant's conviction for "very serious crimes" where, "given [d]efendant's advanced age and serious health problems, he is significantly less likely to recidivate").

In sum, I agree with the Deputy Chief Probation Officer that because of Mr. Scarpa's "age and condition, he poses very little chance of recidivism" and that there are "extraordinary and compelling reasons justifying his release." ECF No. 1056.

Although Mr. Scarpa "engaged in very serious criminal conduct for a large part of his life . . . he is now almost 70 years old, in poor health and has spent a significant portion of his adult life in prison at this point." *Id.*

Under these circumstances, the Bureau of Prisons shall release Mr. Scarpa from custody within five days of this order, unless Mr. Scarpa's attorney advises me that more time is needed to make arrangements to release him to his family or to his fiancée. Mr. Scarpa shall self-quarantine at home for at least fourteen days. *See Rice*, 2020 WL 4505813, at *5.[1]

           **SO ORDERED.**

*Edward R. Korman*

Brooklyn, New York  
November 11, 2020

Edward R. Korman  
United States District Judge

---

[1] I grant Ms. Hinde's motion to continue her earlier appointment under the Criminal Justice Act for the purpose of this proceeding, *nunc pro tunc* to May 1, 2020.